IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WARREN LEWIS,

       Plaintiff,

v.                                        CASE NO. 1:10-cv-74-MMP-GRJ

MICHAEL J ASTRUE, Commissioner
of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying his applications for a period of disability and disability

insurance benefits. Doc. 1.   The Commissioner has answered, and both parties have

filed briefs outlining their respective positions. Docs. 9, 14, 15. For the reasons

discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on April 28, 2006, alleging a

disability onset date of July 20, 2004, due to hernias.  R. 14, 83-85.  His application was

denied initially and upon reconsideration.   R. 14, 45-54.  Following a hearing before an

administrative law judge (ALJ), the ALJ entered an unfavorable decision on August 14,

2008, finding that Plaintiff was not disabled because he retained the residual functional

capacity (RFC) to perform light work.  R. 14-22.  The Appeals Council denied review,

making the ALJ's decision the final decision of the Commissioner.  R. 1-3.  This appeal

followed.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  <u>SUMMARY OF THE RECORD</u>

The Plaintiff raises one issue in this appeal: that "[t]the ALJ failed to follow the directives of Social Security Ruling 02-1P although the rulings are not discretionary." Doc. 14.  That ruling pertains to the assessment of obesity as a factor in a disability determination.  Specifically, Plaintiff alleges that the ALJ failed to follow that ruling in assessing Plaintiff's residual functional capacity, in view of Plaintiff's obesity and the fact that he suffers from arthritis in both hips.

---

[17] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] <u>Walker</u>, 826 F.2d at 1003.

[19] <u>Wolfe</u>, 86 F.3d at 1077-78.

[20] *See id.*

A.      **Personal Background**

Plaintiff was born in July 1959, and completed high school and one year of college.  R. 83, 106-07.  Plaintiff worked as a family support worker for the Department of Children and Families from 1979-2004.  R. 141.  Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date.

B.      **Medical Records**

In July 2006, consultative examining physician Dr. Lance I. Chodosh noted that Plaintiff was morbidly obese and developed recurrent ventral abdominal hernias after undergoing surgery for diverticulosis.  Plaintiff underwent several surgical procedures for the hernias through 2002.  Plaintiff reported bouts of abdominal swelling and rectal bleeding that occurred sporadically, once or twice per month.  Dr. Chodosh opined that Plaintiff was independent in activities of daily living, and that except for intermittent temporary incapacity due to his abdominal problem Plaintiff could walk, stand, sit, stoop, lift light objects, and use his hands normally.  He reported no problems with vision, hearing, or speech.   R. 182-85.

At the time of Dr. Chodosh's examination, Plaintiff was 68.5 inches tall and weighed 334 pounds.  Dr. Chodosh noted that Plaintiff did "not appear particularly unhealthy."  He observed 2+ pitting edema of both lower legs, but no cyanosis, clubbing, deformity, or varicosity.  Plaintiff's motor function was grossly normal in all four extremities, with strength judged at 5/5 throughout.  Plaintiff had normal manual dexterity and good coordination.  His standing balance and gait were normal.  He was unable to squat and rise.  Dr. Chodosh concluded that "in my opinion, based only on objective evidence, this person is able to stand and walk to a moderate degree.  He can

sit normally.  He can stoop occasionally, but cannot squat or kneel.  He can lift up to 20 pounds occasionally, and can carry 10-20 pounds occasionally.  He is able to handle light objects.  Vision, hearing, and speech are essentially normal." *Id.*

Subsequent to Dr. Chodosh's evaluation, Plaintiff underwent surgery for a right pneumothorax in mid-July 2006.  Plaintiff experienced respiratory complications but recovered completely and was able to ambulate three to four times a day prior to his discharge on July 29.  R. 198.  At a follow up examination in August 2006, Plaintiff reported that he felt quite good.  He was using supplemental oxygen, but stated that he only used it because it was prescribed for him.  R. 218.

State Agency physicians reviewed Plaintiff's records and completed RFC assessments, concluding that Plaintiff was able to perform a light range of work.  R. 190-97, 219-26.

In March 2007, Doctors Imaging Group noted a clinical history of generalized pain, specifically right hip pain, left shoulder pain, and low back pain.  Radiographic findings included mild to moderate degenerative changes of both hips.  R. 227-28.  Dr. R. A. Lee Pack reviewed the radiographs and diagnosed osteoarthritis, obesity, plantar fasciitis, and hypertension.  Plaintiff reported improved pain in his right hip, leg, and back, with persistent pain in the plantar surface of his foot, which he said was significantly helped with Anaprox.  Plaintiff stated that he wanted to lose weight and declined medical intervention for the hypertension, instead opting to pursue diet and exercise.   R. 232.

C.    **Hearing Testimony**

Plaintiff testified that his weight at the time of the hearing was 330 pounds. R.

24-44.  Plaintiff stated that his job activities for the State as of July 2004 included

transporting foster children to placements, medical appointments, and schools

throughout Florida.  Plaintiff spent most of the day driving.  Prior to that, Plaintiff was a

shift supervisor at a home for disabled men, overseeing patients on the third shift.

Plaintiff resigned from his employment in 2004 due to abdominal swelling and rectal

bleeding.  Plaintiff testified that he experiences fatigue and shortness of breath, pain on

the side where he had the pneumothorax, and abdominal pain.  He stated that he does

as little as possible so as to avoid triggering the abdominal swelling and bleeding.  The

amount of time he spends laying down varies because of his arthritis, which causes his

bones to ache.  *Id*.

Vocational Expert (VE) David Pigue testified that Plaintiff's past work would be

classified as medium exertional level with a skill level (specific vocational preparation, or

"SVP") of three.  The ALJ posed a hypothetical to the VE, assuming the following work

limitations: low stress, simple, unskilled;  exertional limits of lifting/carrying 10 pounds

frequently and 20 occasionally; standing/sitting six hours; avoiding stairs; avoiding

pushing/pulling with lower extremities and no pushing/pulling with upper extremities; no

activities requiring bilateral manual dexterity or gross fine manipulation; no climbing;

occasionally balancing, stooping, crouching, kneeling, and crawling; capable of

understanding, remembering, and carrying out simple job instructions.   The VE opined

that such an individual could perform a full range of light work activity within the SVPs of

one, two, and three (unskilled to lower level semi-skilled work), and that Plaintiff's past

work would exceed the exertional parameters of the hypothetical.  *Id*.

The ALJ inquired whether there were unskilled jobs that the hypothetical individual could perform.  The VE testified that there would be a "wide range of alternative work activity regionally and nationally," that would include hundreds of job titles within the assembler job description.  Other positions include cashier, counter attendant, and ticket sellers.  *Id*.

The ALJ then posed the same hypothetical with a further restriction of no more than 10 pounds carried occasionally.  The VE opined that the majority of assembling jobs would remain viable for such an individual.  *Id*.

With the further restriction of jobs with a sit/stand option, the VE opined that the most assembly jobs would be excluded, but the individual could perform the tasks of a cashier and ticket seller.  Plaintiff's counsel inquired as to what jobs would be available to someone who was required to lay down for three to four hours a day, and the VE opined that such a restriction would preclude the ability to engage in competitive employment, as would two or three absences a week.  *Id*.

**D.    Findings of the ALJ**

The ALJ found that the Plaintiff did not engage in substantial gainful activity since his alleged onset date of July 20. 2004.  He found that Plaintiff had the following severe combination of impairments: morbid obesity, status-post a history of pneumothorax, five hernias, a history of diverticulosis status post sigmoid resection, and rectal bleeding.  The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments the met or equaled the listings, based upon the fact that the medical evidence did not document a listing-level severity, and no acceptable

medical source had mentioned findings equivalent in severity to the listings.  R. 14-22.

The ALJ determined that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently, that he could stand, walk, or sit for about 6 hours each in an 8-hour workday, with the postural and environmental limitations posed to the VE, and that accordingly Plaintiff satisfied the criteria for RFC to perform light work.  In making this determination, the ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by Plaintiff.  The ALJ found, however, that Plaintiff's statements regarding the intensity, duration, and limiting effects of his symptoms were not entirely credible.  In particular, the ALJ noted the absence of any evidence of record that would support Plaintiff's claim of totally debilitating symptoms, and concluded that Plaintiff's "testimony vastly exaggerated his functional limitations."  While it was reasonable to expect some pain and/or limitation as a result of Plaintiff's complaints, the record evidence did not substantiate any cause for the extent of pain and functional limitations described by Plaintiff.  *Id.*

The ALJ observed that despite Plaintiff's musculoskeletal and other difficulties, his medical treatment had been conservative.  Plaintiff's demeanor at the hearing did not indicate disabling dysfunction, and he lacked the general appearance of someone who had been experiencing prolonged or severe pain.  Plaintiff did not demonstrate any significantly limiting mental or emotional problems during the hearing.  *Id.*

The ALJ further noted that the findings of the State Agency physicians' assessments were consistent with a conclusion that Plaintiff had the RFC to perform light work, and that the medical evidence showed that Plaintiff's medical difficulties were

manageable.  The ALJ was persuaded that the continuation of medical treatment,

weight loss, and physical therapy "will result in maintaining this relatively young claimant

capable of pursuing a useful and productive lifestyle."  He concluded that the medical

evidence demonstrated that Plaintiff's ailments were responsive and amenable to

conservative treatment and medication, provided that Plaintiff was compliant with such

treatment, and that Plaintiff should be able to perform basic work activities in a regular

work setting without much interference from his symptoms and functional limitations.

*Id*.

## IV.  Discussion

Plaintiff contends that the ALJ failed to properly follow Social Security Ruling 02-

1p in assessing Plaintiff's RFC.  That SSR guides the evaluation of obesity in disability

claims, and was published following the deletion of Listing 9.09, Obesity, from the

Listing of Impairments.  *See* 67 Fed. Reg. 57859, 57860-61 (Sept. 12, 2002).  The SSR

recognizes that obesity is a risk factor that increases the chance of developing

impairments in other body systems, including the cardiovascular, respiratory, and

musculoskeletal body systems.  *Id*.  The SSR provides that the ALJ should consider the

effect of obesity at each step of the sequential evaluation:

> [T]he combined effects of obesity with other impairments can be greater
> than the effects of each of the impairments considered separately....
> [A]djudicators [should] consider the effects of obesity not only under the
> listings but also when assessing a claim at other steps of the sequential
> evaluation process, including when assessing an individual's residual
> functional capacity.

*Id*. at 57861-62.

Plaintiff asserts that under the former obesity listings, Plaintiff's height and weight

established that he was "listing level obese," and that "[a]dditionally, Plaintiff LEWIS suffers from arthritis in both hips."  *Id*.  Plaintiff argues that this case should be remanded with directions to the Commissioner to "follow Social Security Ruling 02-1p; in assessing [Plaintiff's] Residual Functional Capacity."  *Id*.

In response, the Commissioner points out that SSR 02-1p states that the body mass listings do not correlate to any specific degree of functional loss.  Rather, obesity, like other medical conditions, is a "severe" impairment when – alone or in combination with other impairments – it significantly limits an individual's physical or mental ability to do basic work activities.  Doc. 15; *see* 67 Fed. Reg. 57859, 57861-62.   The Commissioner contends that the ALJ properly found that Plaintiff's obesity was a severe impairment, but that the evidence did not show that Plaintiff's obesity imposed additional limitations resulting in disability.  *Id*.

## The ALJ Properly Considered Plaintiff's Obesity

In finding that Plaintiff did not have an impairment or combination of impairments that met or medically equalled the Listings, the ALJ gave "particular consideration" to the effect of his impairments upon the musculoskeletal system, cardiovascular system, digestive system, and endocrine system.  *See* R. 16.

Further, in evaluating Plaintiff's RFC at step four of the sequential analysis, the ALJ noted that when Dr. Chodosh examined Plaintiff, Plaintiff weighed 334 pounds. The ALJ pointed out that while Dr. Chodosh found that Plaintiff had pitting edema in his lower extremities, his muscle strength was 5/5 bilaterally for both upper and lower extremities.  While Dr. Chodosh found that Plaintiff could not squat or kneel, and he had limited range of motion in his lumbar spine, Dr. Chodosh concluded that Plaintiff

could sit, stoop occasionally, stand and walk to a moderate degree, lift up to 20 pounds

occasionally, and carry 10-20 pounds occasionally. Relying upon this evidence and

other diagnostic tests in the record the ALJ determined that "the diagnostic tests and

examinations in this case were essentially within normal limits.  The reviewing State

agency physicians noted that the physical examinations . . . were essentially normal."

R. 14-24.  The ALJ appropriately incorporated the limitations identified by Dr. Chodosh

in determining that Plaintiff had the RFC for light work.

        Accordingly, although the ALJ did not expressly cite the SSR (which he was not

required to do so) the record supports a conclusion that the ALJ fully and properly

considered Plaintiff's obesity, and the functional limitations arising therefrom, in

combination with all of Plaintiff's other impairments in evaluating his RFC. As such,

Plaintiff's argument that the ALJ erred by failing to address Plaintiff's obesity as

required by the Social Security Ruling has no merit.

## V. <u>CONCLUSION</u>

        For the foregoing reasons, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED.**

        **IN CHAMBERS** at Gainesville, Florida, this 4th day of August, 2011.


_s/Gary R. Jones_
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**